IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

THOMAS OTTER ADAMS, #100 612    *

    Plaintiff,                              *

    v.                                          *                2:07-CV-309-WHA
                                           (WO)
MS. LATTRICE GREEN -                  *
CLASSIFICATION, *et al*.,
                                     *

    Defendants.

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, a state inmate incarcerated at the Easterling Correctional Facility located in Clio, Alabama, filed this complaint on April 11, 2007. He brings this action pursuant to 42 U.S.C. § 1983 complaining that the named defendants engaged in conduct violative of their own administrative regulations and have subjected him to cruel and unusual punishment by holding him in administrative segregation. Plaintiff requests trial by jury and seeks damages as well as declaratory and injunctive relief. Upon review of the complaint, the court concludes that it is due to be dismissed prior to service of process pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).[1]

_____

[1]A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process, regardless of the payment of a filing fee, if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## I.  DISCUSSION

*A.  The Fourteenth Amendment Claim*

Plaintiff contends that defendants violated his right to due process with respect to unspecified disciplinary and/or classification matters when they failed to notify the central review board of "actions, punishments which were taken on 9-21-2005, 10-3-2006." Plaintiff complains that such conduct violated prison regulations, the classification manual, and state law.  (Doc. No. 1 at pgs. 2-3.)

An essential element of a complaint filed under § 1983 is that the conduct complained of deprived Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527 (1981).  While a violation of a state or federally-created liberty interest can amount to a violation of the Constitution, not every violation of state or federal law or state or federally-mandated procedures is a violation of the Constitution.  *See Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982); *Brown v. Dodson,* 863 F. Supp. 284 (W.D. Va. 1994).  Not every deviation from an agency's rules violates of the Constitution.  *Smith v. State of Georgia*, 684 F.2d 729 (11th Cir. 1982); *see also Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987).  Proof of denial of due process arising out of administrative proceedings requires a showing of substantial prejudice which implicates fundamental fairness.  *Ka Fung Chan v. Immigration & Naturalization Service*,  634 F.2d 248 (5th Cir. 1981); *N.L.R.B. v. Webb Ford, Inc.*, 689 F.2d 733 (7th Cir. 1982).

Here, Plaintiff fails to allege much less indicate that he has been substantially prejudiced by the proceedings about which he complains. Moreover, with the narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472 (1995), Plaintiff's claims regarding prison officials' failure to follow prison regulations and/or state laws or regulations, without more, simply does state a claim of constitutional magnitude. *Id.*; *see also, e.g., Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167, 1168 (5th Cir. 1990); *Baker v. McCollan*, 433 U.S. 137, 146 (1979).

B.  *The Eighth Amendment Claim*

Plaintiff alleges that the segregation board punishes inmates in a cruel and unusual manner "in which personal opinions, racism, retaliation, are met and carried out."[2] In support of this contention, Plaintiff complains that he is being held in administrative segregation which constitutes an illegal condition of confinement, illegally restrains him, and amounts to kidnapping. (Doc. No. 1 at pg. 3.)

The Eighth Amendment prohibits only the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. It proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Id.* at 347; *see also Wilson*

---

[2]Plaintiff's references to "racism" and "retaliation" are vague and conclusory assertions which are completely devoid of any factual support. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that in civil rights actions "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.").

*v. Seiter*, 501 U.S. 294 (1991);  *Taylor v. Adams,* 221 F.3d 1254, 1257 (11th Cir. 2000).

Here, Plaintiff's complaint that his current housing assignment amounts to cruel and unusual punishment, without more,  fails to allege a deprivation denying him the  minimal civilized measures of life's necessities so as to rise to the level of cruel and unusual punishment.  Such claim is therefore due to be dismissed.  28 U.S.C. § 1915(e)(2)(B)(ii).  *See Sheley v. Dugger,* 833 F.2d 1420, 1428-29 (11th Cir.1987) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment.").

To the extent Plaintiff's claim may be construed as an allegation that his placement on administrative segregation violates his due process rights, he is entitled to no relief on the facts alleged. The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v.*

*McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may

not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,*

724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).

In the first situation, the liberty interest exists apart from the state; in the second situation,

the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11ᵗʰ Cir.

1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to

more adverse conditions of confinement. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976)

(no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-

security prison because "[c]onfinement in any of the State's institutions is within the normal

limits or range of custody which the conviction has authorized the State to impose"); *Olim*

*v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be

confined in a particular institution and may be subjected to an interstate transfer without

implicating the Constitution). Moreover, an inmate in the Alabama prison system has no

constitutionally protected interest in the procedure affecting his classification level, the

privileges bestowed upon him, or confinement in the least restrictive prison environment

because the resulting restraints are not so severe that they exceed the sentence imposed upon

him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of

misconduct falls within the expected parameters of the sentence imposed by a court of law.").

Thus, the deprivation about which Plaintiff complains, without more, does not "exceed the

sentence [imposed by the trial court] in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force." *Id*. at 484. This court must therefore

determine whether the actions about which Plaintiff complains involve the deprivation of a

state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court recently noted,

> *Sandin* involved prisoners' claims to procedural due process protection
> before placement in segregated confinement for 30 days, imposed as discipline
> for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt
> v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular,
> had employed a methodology for identifying state-created liberty interests that
> emphasized "the language of a particular [prison] regulation" instead of "the
> nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In
> *Sandin,* we criticized this methodology as creating a disincentive for States to
> promulgate procedures for prison management, and as involving the federal
> courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct.
> 2293. For these reasons, we abrogated the methodology of parsing the
> language of particular regulations.
> "[T]he search for a negative implication from mandatory language in
> prisoner regulations has strayed from the real concerns undergirding the liberty
> protected by the Due Process Clause. The time has come to return to the due
> process principles we believe were correctly established in and applied in
> *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under
> certain circumstances create liberty interests which are protected by the Due
> Process Clause. But these interests will generally be limited to freedom from
> restraint which, while not exceeding the sentence in such an unexpected
> manner as to give rise to protection by the Due Process Clause of its own
> force, nonetheless imposes atypical and significant hardship on the inmate in
> relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct.
> 2293 (citations and footnote omitted).
> After *Sandin,* it is clear that the touchstone of the inquiry into the
> existence of a protected, state-created liberty interest in avoiding restrictive
> conditions of confinement is not the language of regulations regarding those
> conditions but the nature of those conditions themselves "in relation to the
> ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying the *Sandin* inquiry, the court concludes that Plaintiff's assignment to

-6-

administrative segregation "though concededly punitive, does not represent a dramatic departure from the basic conditions" of the sentence imposed upon him. *Id*. at 485. Plaintiff does not allege much less indicate that his confinement on administrative segregation has subjected him to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin* , 515 U.S. at 484, 115.  Because Plaintiff has not alleged deprivation of a protected liberty interest, his complaints in relation thereto fail to state  a due process claim.  *See id.* at 487; *Griffin v. Vaughn,* 112 F.3d 703, 706 (3rd Cir. 1997).

## II.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's complaint be DISMISSED with prejudice and prior to service of process  pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i-ii).

It is further

ORDERED that on or before **May 31, 2007** the parties may file objections to this Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of May, 2007.


　　　　　　　　/s/Charles S. Coody
　　　　　　　　CHARLES S. COODY
　　　　　　　　CHIEF UNITED STATES MAGISTRATE JUDGE